**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Ryeshea Gomez, *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Direct Energy, L.P. <br><br> Defendant. | Civil Action No: <br><br> **CLASS ACTION COMPLAINT** |

For her Class Action Complaint, Plaintiff, Ryeshea Gomez, by and through her undersigned counsel, pleading on her own behalf and on behalf of all others similarly situated, states as follows:

## INTRODUCTION

1. Plaintiff, Ryeshea Gomez ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Direct Energy, L.P. ("Direct Energy" or "Defendant"). Defendant negligently, knowingly, and/or willfully placed automated calls to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

2. Direct Energy is an energy company that provides electricity and natural gas services. It "serves customers in all 50 states in the United States." *See* https://www.directenergy.com/about/brands (last visited Feb. 1, 2018).

3. As part of its aggressive sales operation, Direct Energy cold calls consumers to sell and market its energy services.

4. Direct Energy identified Plaintiff as a sales target and proceeded to call her cellular telephone number with an automatic telephone dialing system, without any consent

whatsoever, to sell its services.

5. Plaintiff seeks relief for herself and all others similarly situated for Direct Energy' unlawful behavior.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

7. Jurisdiction in this District is proper pursuant to 28 U.S.C. § 1332(d)(2), as Plaintiff seeks up to $500 in damages for each violation of the TCPA, which when aggregated among a proposed class numbering more than a thousand members, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Plaintiff also alleges a national class which will result in at least one class member residing in a different state.

8. Personal jurisdiction and venue in this district are proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides here, a substantial part of the events giving rise to the claim occurred here, and Defendant expressly aimed its conduct at this District. *See* https://www.directenergy.com/ ("Hey there, Pennsylvania! Ready to make an energy choice that could easily improve your life? . . . You have options for Pennsylvania natural gas and electricity, plans using only green energy, and plans to help you control your usage from your smartphone. Ready to get started?") (last visited Feb. 1, 2018).

## PARTIES

9. Plaintiff is, and at all times mentioned herein was, an adult individual residing in York, Pennsylvania.

10. Direct Energy is a Texas corporation with its principal place of business located at 12 Greenway Plaza, Suite 600, Houston, Texas 77046.

11.     Plaintiff has never had a business relationship with Direct Energy and never provided prior express written consent to be contacted by Direct Energy on her cellular telephone.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

12.     The TCPA regulates, among other things, the use of automated telephone dialing systems.

13.     47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)     to dial such numbers.

14.     47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called.

15.     "Prior express *written* consent" is required before making automated telemarketing calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200.

16.     According to the Federal Communications Commission, ("FCC"), an ATDS "encompass[es] any equipment that stores telephone numbers in a database and dials them without human intervention." *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (concluding there were genuine disputes of material fact regarding whether messages were sent using an ATDS where plaintiffs alleged that

the equipment used functioned similarly to a predictive dialer in that it received numbers from a computer database and dialed those numbers without human intervention.").

17. "Human intervention" means significant human involvement in the dialing of a number, and any human involvement with phone number compilation is irrelevant. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, ¶ 132 (2003) ("The basic function of [ATDS], however, has not changed—the capacity to dial numbers without human intervention." (emphasis added and omitted)); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 654 (N.D.W. Va. 2014) ("[I]t is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the Campaign Manager software.").

## ALLEGATIONS APPLICABLE TO ALL COUNTS

18. Defendant has repeatedly placed automated calls using a predictive dialer automatic telephone dialing system to Plaintiff's cellular telephone (717) XXX-6791.

19. Specifically, Direct Energy loads telephone numbers into the campaign, its dialing system then dials those numbers throughout the day at a rate which attempts to dial only when a Direct Energy agent may be available to take an already-dialed, connected call. Once a call is answered, Direct Energy will route the call to the available agent; at no point in this process does a human intervene in making the calls.

20. Plaintiff's number was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

21. Direct Energy calls Plaintiff from telephone number (215) 543-7073 in order to sell her energy services.

22. When Plaintiff answers Direct Energy's calls, she hears a prolonged period of silence before she is connected to a live Direct Energy representative.

23. In August 2017 and December 2017, Plaintiff told a Direct Energy representative to cease calling her cellular telephone number and to place her on a do-not-call list.

24. Despite each of Plaintiff's requests for Direct Energy to stop calling her cellular telephone, Direct Energy continued to call the -7073 number.

25. Direct Energy did not have Plaintiff's prior express written consent to place automated calls to Plaintiff on her cellular telephone.

## CLASS ACTION ALLEGATIONS

### A. The Class

26. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated.

27. Plaintiff represents, and is a member of the following two classes:

**TCPA Class: (1) All persons in the United States (2) to whose cellular telephone number (3) Direct Energy placed a non-emergency telephone call to sell its energy services (4) using an autodialer (5) within four years of the complaint (6) where Direct Energy did not have prior express written consent.**

**Post-DNC Class: (1) All persons in the United States (2) to whose cellular telephone number (3) Direct Energy placed a non-emergency telephone call to sell its energy services (4) using an autodialer (5) within four years of the complaint (6) where Direct Energy did not have prior express written consent (7) after a do-not-call directive.**

28. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Class members number in the several thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

**B. Numerosity**

29.     Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without prior express written consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

30.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**C. Common Questions of Law and Fact**

31.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

   a. Whether Direct Energy engaged in a pattern of using an autodialer to palce calls to cellular telephones;

   b. Whether Direct Energy engaged in a pattern of suing an automated telephone dialing system when calling cellular telephones;

   c. Whether Direct Energy had prior express written consent to make each call;

   d. Whether Direct Energy's conduct was knowing willful, and/or negligent;

   e. Whether Direct Energy is liable for damages, and the amount of such damages; and

   f. Whether Defendant should be enjoined from such conduct in the future.

32.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely places automated calls to telephone numbers assigned to cellular telephone services, without prior express written consent, is accurate, Plaintiff and the

Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## D. Typicality

33.   Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## E. Protecting the Interests of the Class Members

34.   Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this action.

## F. Proceeding Via Class Action is Superior and Advisable

35.   A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate claims against Direct Energy is small because it is not economically feasible for Class members to bring individual actions.

36.   Management of this class action is unlikely to present any difficulties.  Several courts have certified classes in TCPA actions.  These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
### Negligent Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

37.   Plaintiff repeats and realleges the above paragraphs of this Complaint and

incorporates them herein by reference.

38.     Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express written consent.

39.     Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

40.     Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

41.     Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

42.     Plaintiff and the Classes are also entitled to and do seek a declaration that:

   a. Defendant violated the TCPA;

   b. Defendant placed telemarketing calls; and

   c. Defendant placed telemarketing calls to the Plaintiff and the Classes without prior express written consent.

## COUNT II
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

43.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

44.     Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express written consent.

45.     Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

46. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

47. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

48. Plaintiff and the Classes are also entitled to and do seek a declaration that:

   a. Defendant knowingly and/or willfully violated the TCPA;

   b. Defendant knowingly and/or willfully placed telemarketing calls to Plaintiff and the Classes;

   c. Defendant willfully placed telemarketing calls to Plaintiff and the Classes, knowing it did not have prior express written consent to do so; and

   d. It is Defendant's practice and history to place telemarketing calls to non-customers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Declaratory relief as requested;

3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

5. An award of attorneys' fees and costs to counsel for Plaintiff; and

6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: February 6, 2018

                                      Respectfully submitted,

                                      By */s/ Sergei Lemberg*
                                      Sergei Lemberg, Esq.
                                      LEMBERG LAW, L.L.C.
                                      43 Danbury Road, 3rd Floor
                                      Wilton, CT 06897
                                      Telephone: (203) 653-2250
                                      Facsimile:  (203) 653-3424
                                      Attorneys for Plaintiff